1  Christian Gabroy
   Nev. Bar No. 8805
2  Kaine Messer
   Nev. Bar No. 14240
3  GABROY | MESSER
   The District at Green Valley Ranch
4  170 South Green Valley Parkway
   Suite 280
5  Henderson, Nevada 89012
   Tel:   (702) 259-7777
6  Fax:   (702) 259-7704
   christian@gabroy.com
7  kmesser@gabroy.com
   *Attorneys for Plaintiff Douglas Vasquez*

8

9            **UNITED STATES DISTRICT COURT**
                **DISTRICT OF NEVADA**

10 DOUGLAS VASQUEZ, individually and        Case No. 2:23-cv-00441-CDS-DJA
   on behalf of all others similarly situated,

11                                          **PLAINTIFF'S UNOPPOSED**
           Plaintiff,                        **MOTION FOR PRELIMINARY**
12                                           **APPROVAL OF CLASS**
        vs.                                  **ACTION SETTLEMENT**
13
   GIBRALTAR HOSPITALITY
14 SERVICES, LLC d/b/a and a/k/a 7TH
   AND CARSON;
15 EMPLOYEE(S)/AGENT(S) DOES 1-10;
   and ROE CORPORATIONS 11-20;
16 inclusive,
                   Defendants.
17

18    **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
                **OF CLASS ACTION SETTLEMENT**
19
20         Plaintiff Douglas Vasquez ("Plaintiff" or "Vasquez"), by and through his

21 attorneys of record, Christian Gabroy, Esq. and Kaine Messer, Esq. of Gabroy |

22 Messer, hereby files this Unopposed Motion For Preliminary Approval Of Class

23 Action Settlement. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,

24 Plaintiff asks this Court to give preliminary approval of the Settlement (the

25 "Settlement"), a copy of which is submitted for this Court's review concurrently

26 herewith as Exhibit 1.

27         This Motion is made and based upon the below Memorandum of Points and

28 Authorities, the exhibits attached hereto, other papers and pleadings in this action,

and any oral argument this Honorable Court may entertain.

DATED this 9th day of December 2023.

GABROY | MESSER

By:  /s/ Christian Gabroy
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:    (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff Douglas Vasquez*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This matter arises from Plaintiff's allegations that Defendant maintained an unlawful tip-sharing policy which required Plaintiff and those similarly situated to share portions of their earned tips with Defendant's management, in violation of our law. Defendant denies any wrongdoing but does not oppose this Motion as the parties have reached resolution on this matter and now present such settlement to this Court for approval pursuant to our law.

Plaintiff filed his complaint against Defendant Gibraltar Hospitality Services, LLC d/b/a and a/k/a 7th and Carson ("Defendant") in the Eighth Judicial District Court for the State of Nevada in and for the County of Clark on January 26, 2023. *See* ECF No. 1-2, pp. 2-19. Plaintiff's legal claims stem from his allegation that Defendant maintained an unlawful practice of requiring Plaintiff and those similarly situated to share portions of their earned tips with Defendant's management. *See id.* at pp. 6-7.

Defendant removed this matter to federal court on or about March 23, 2023. ECF No. 1. As previously represented to this Court, the parties then began exploring

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    the potential for settlement. *See, e.g.,* ECF No. 10, p. 1.

2    To that end, the Parties then engaged in extensive discussions regarding
3    their respective positions and the information and discovery materials provided to
4    properly evaluate the merits of the claims alleged.

5    Following such extensive discussions regarding the strengths of their
6    respective positions, the Parties reached a proposed class action settlement through
7    arm's-length negotiations. *See* Exhibit I.

8    **II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS**

9    The Parties' Settlement provides for significant monetary recovery on
10   behalf of the Class in exchange for a release of tip confiscation claims, as well as
11   setting forth the legally appropriate mechanism for providing notice to the Class of
12   the terms and conditions of the Settlement. *See* Exhibit 1, ¶¶14-17.

13   The Settlement provides for a maximum settlement amount of $21,000.00.
14   *See* Settlement at ¶ 10(c). Out of that amount, the following approximate
15   breakdown applies:

16   •   $10,000.00[1] in estimated settlement funds to the Class;

17   •   Up to $5,000.00 in actual settlement administration costs (the "Claims
18   Administration Award");

19   •   $1,000.00 in enhancement to named Plaintiff for his participation in the
20   lawsuit (the "Enhancement Award");

21   •   $3,500.00 in attorney's fees; and,

22   •   Up to $1,500.00 in actual costs (and together with the foregoing attorneys'
23   fees, the "Class Counsel Award).

24   *Id.* at ¶ 10(c); ¶ 10(d); ¶ 10(g); ¶ 11, and ¶ 12. Settlement Awards for each Class
25   Member will be allocated from the Net Settlement Amount and paid as follows:
26   one-half (1/2) will be allocated to alleged unpaid wages for which IRS Forms W-2

27

28   [1] The Net Settlement Amount (defined herein) is subject to change and may increase depending on the actual costs awarded to Class Counsel and to the claims administrator.

1
2
3
4
5
6
7
8
9

will issue and one-half (1/2) will be allocated to alleged unpaid penalties and interest for which IRS Forms 1099-MISC will issue. *Id.* at ¶ 10(e). Each Class Member who receives a Settlement Award shall pay his/her share of payroll taxes from the one-half (1/2) of the Settlement Award allocated to alleged unpaid wages. Id. Accordingly, each Settlement Award will be reduced by applicable payroll tax withholdings and deductions. *Id.* Defendant shall pay the normal employer's portion of payroll taxes separately, as calculated by the Claims Administrator. *Id.* Any uncashed checks from Settlement Awards shall revert back to Defendant.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. *See* Exhibit I at ¶ 7. Plaintiff alleges that Defendant retained and utilized a portion of its employees' tips for general business purposes by withholding a portion of the tips and giving it directly to management personnel. ECF No. 1-2, pp. 2-3. Plaintiff also brought an individual claim for FLSA retaliation. *Id.* at p. 15. Defendant disputes and denies Plaintiff's claims. The Settlement represents a compromise, but is not intended to, nor should it, be construed as an admission of liability as to the merits of Plaintiff's claims or whether class certification is maintainable. *See* Settlement at ¶¶ 4, 25. Defendant expressly denies liability on the merits and denies that class certification is appropriate or would be maintained. Nevertheless, because the Settlement provides for a per-hours-worked payout, each participating class member will be entitled to a proportionate share of the Settlement based on their hours worked. *Id.* at ¶ 10(d). In sum, the recovery of up to $10,000.00 for all class members represents a significant recovery given the Parties' positions and uncertain legal requirements at issue and with regard to class certification. *See* Exhibit I at ¶ 7.

27
28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1

2    **B.    The Release.**

Defendant denies liability under any of Plaintiff's claims. *See* Settlement at

3    ¶¶ 4, 25. The Settlement provides that, in consideration for the Settlement,

4    Settlement Class Members[2] who do not file valid requests for exclusion will

5    release all tip confiscation claims relating or arising out of the facts of Plaintiff's

6    complaint against Defendant pursuant to the terms of the Settlement.[3]  *Id.* at ¶¶

7    16,18.

8    **C.    The Settlement Mechanism.**

9    The Settlement is a claims-made settlement. The Parties have agreed to

10   use a third-party Claims Administrator to administer the claims process. *Id.* at

11   10(d). The Settlement provides for the Claims Administrator to send out notice

12   explaining the terms and conditions of the Settlement to the approximately 1,500

13   employees and former employees of Defendant. (A copy of the Notice to be

14   approved by the Court and sent to putative class members is attached as Exhibit

15   A to the Settlement Agreement.) Following mailing of the Notice, putative class

16   members then have thirty (30) days to complete and submit a Claim Form or

17   request to be excluded from the Settlement or object to the Settlement. *See*

18   Settlement at ¶ 14(a). (A copy of the Claim Form to be approved by the Court and

19   sent to class members is attached as Exhibit B to the Settlement Agreement.)

20   The Settlement further provides that following the notice period the Court

21   will hold a final "fairness" hearing to provide final review and approval of the

22   Settlement. *Id.* at ¶ 19. (Attached as Exhibit C to the Settlement Agreement is a

23   proposed Order granting preliminary approval of the Settlement. Attached as

24   Exhibit D to the Settlement is a proposed Order granting final approval of the

25

26   [2] "Settlement Class" means the following class or classes: all hourly-paid servers and
     bartenders employed by Defendant in the state of Nevada from whom tips were taken and
27   transferred to management personnel and/or other non-tipped personnel at any time from
     January 26, 2021 until the date the Court grants preliminary approval.

28   [3] "Released Claims" has the meaning ascribed to it in ¶ 1(v) of the Settlement.

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   Settlement.) The Notice advises putative class members about the fairness
2   hearing and their opportunity to attend the hearing and make their views known.
3   *Id.* at ¶ 1(q). At the final fairness hearing, the parties will address any issues
4   raised by putative class members or the notice process itself, and the Court will
5   have a second opportunity to review the Settlement in full.

6   **III.   THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING**
7   **PRELIMINARY APPROVAL OF THE SETTLEMENT**

8          Fed. R. Civ. P. 23(e) provides that settlement of the claims of a certified
9   class is subject to court approval. In general, settlement of class actions is favored
10  as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658
11  (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th
12  Cir. 1992)).

13         Procedurally, the reviewing court's evaluation is conducted in two stages.
14  *Alberto,* 252 F.R.D. at 658. At the first stage the court conditionally certifies a
15  class for settlement purposes, preliminarily approves the settlement pending the
16  "fairness hearing," and authorizes notice of the proposed class settlement to be
17  given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation
18  (Fourth)* § 21.632 (2004) *("Manual for Complex Litigation")* (summarizing
19  "preliminary fairness review"). Stage two is the fairness hearing, set for a time
20  after notice has been provided to the class and class members have had an
21  opportunity to submit claims or objections to the proposed settlement or to opt out
22  of it, where the court reaches a final determination about whether the proposed
23  settlement should be approved as a fair, adequate, and reasonable resolution of
24  the dispute. *Id.* at 659 (citations omitted).

25         Because this is the first stage of the Court's evaluation of the Settlement,
26  Plaintiff submits that (A) the Class should be conditionally certified, (B) the

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1  Settlement should be preliminary deemed fair, reasonable, and adequate, and (C)

2  notice should be sent out as set forth in the Settlement.

3     A.    **The Settlement Class Should Be Certified.**

4          To facilitate the proposed settlement, Plaintiff respectfully requests that the

5  Court conditionally certify the following settlement class pursuant to Fed. R. Civ.

6  P. 23:

                all hourly-paid servers and bartenders employed by
7               Defendant in the state of Nevada from whom tips
                were taken and transferred to management
8               personnel and/or other non-tipped personnel at any
                time from January 26, 2021 until the date the Court
9               grants preliminary approval (the "Settlement
                Class").
10

11 Settlement at ¶ 1(f) and (aa). The Parties agree that, for purposes of settlement

12 only, the criteria for certifying the Class under Fed. R. Civ. P. 23(a) and Fed. R.

13 Civ. P. 23(b)(3) may be satisfied in this case, and the proposed Settlement Class

14 should be conditionally certified for purposes of settlement.

15          1.    **All four criteria of FRCP 23(a) are met.**

16          *FRCP 23(a)(1): The class is so numerous that joinder of all members*

17 *is impracticable.* "As a general rule, classes numbering greater than forty

18 individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks,*

19 *Inc.*, No. C 08-02294 MHP, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 22, 2008).

20 Here, the number of current and former employees of Defendant who could

21 comprise the Settlement Class consists of approximately 1,500 individuals.

22 Plaintiff therefore submits that the numerosity criterion is readily satisfied. For

23 purposes of approving this Settlement only, Defendant does not oppose

24 Plaintiff's assertion that sufficient numerosity exists.

25          *FRCP 23(a)(2): There are questions of law or fact common to the*

26 *Class.* The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*,

27 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d

28 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

1   members' claims must share some substantial issues of law or fact, but need not
2   be identical. *Quintero*, 2008 WL 4666395, at *4. Either "shared legal issues with
3   divergent factual predicates" or "a common core of salient facts coupled with
4   disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150
5   F.3d at 1019.

6       Here, the Class Members consist of the Settlement Class. Under 29
7   U.S.C. § 203(m), supervisors and/or managers are not allowed to participate in
8   employee tip pools. Plaintiff alleges that he and those similarly situated are
9   hourly employees who participate in a tip pool of which Defendant allowed at
10  least one supervisor and/or manager to collect a distribution from. Thus, Plaintiff
11  asserts that Plaintiff and Class Members assert common factual and legal
12  questions, which include, whether Class Members had their tips unlawfully
13  confiscated and whether such amounts were distributed to management
14  personnel. Based on these common issues, Plaintiff submits that this criterion is
15  met. For purposes of approving this Settlement only, Defendant does not oppose
16  Plaintiff's assertion that sufficient commonality exists.

17      **FRCP 23(a)(3): The claims or defenses of the representative parties
18  are typical of the claims or defenses of the class.** Like commonality, the
19  typicality standard is applied "permissive[ly]." *See Staton v. Boeing Co.*, 327 F.3d
20  938, 957 (9th Cir. 2003) (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the
21  representatives' claims are "'reasonably coextensive with those of absent class
22  members; they need not be substantially identical.'" *Id.* Here, named Plaintiff is a
23  former employee who alleges that Defendant retained and utilized a portion of its
24  employees' tips for general business purposes by withholding a portion of the tips
25  and giving it directly to management personnel. ECF No. 1-2, pp. 2-3. Defendant
26  expressly denies Plaintiff's allegations. Plaintiff asserts the same tip confiscation
27  claims violations as all other members of the class. *Id.* at pp. 7-8. Thus, Plaintiff
28  submits that her claims are typical to those of the Class. For purposes of

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   approving this Settlement only, Defendant does not oppose Plaintiff's assertion

2   that sufficient typicality exists.

3       ***FRCP 23(a)(4): The representative parties will fairly and adequately***

4   ***protect the interests of the class.*** Courts have interpreted this requirement as

5   posing two questions: (1) whether either the named plaintiff or his counsel has

6   any conflicts of interest with other class members, and (2) whether the named

7   plaintiff and his counsel will vigorously prosecute the action on behalf of the

8   class. *Staton,* 327 F.3d at 957 (citing *Hanlon* and other cases). Here, neither the

9   named Plaintiff nor her counsel have interests antagonistic to those of other

10  Class Members. The named Plaintiff shares with absent Class Members an

11  interest in recovering compensation that Defendant allegedly denied them. In

12  addition, Plaintiff's counsel has extensive experience in wage and hour class

13  actions, as well as class action litigation more generally, and the proposed

14  settlement was reached only after arm's-length direct settlement discussions.

15  *See* Exhibit I at ¶¶ 3, 7; *see also* a true and correct copy of the Declaration of

16  Christian Gabroy, Esq. attached hereto as Exhibit II at ¶¶ 5, 7. Thus, Plaintiff

17  submits that the named Plaintiff and Plaintiff's counsel are adequate

18  representatives of the Class. For purposes of approving this Settlement only,

19  Defendant does not oppose such assertion.

20              **2.    The criteria of FRCP 23(b)(3) are met.**

21      To certify a class under Fed. R. Civ. P. 23(b)(3), a court must find that

22  common questions of fact or law predominate over questions affecting only

23  individual members of the proposed class, and that a class action is the superior

24  method for fairly and efficiently adjudicating the controversy. Plaintiff submits that

25  both criteria are met here. For purposes of approving this Settlement only,

26  Defendant does not oppose such assertion.

27      ***The predominance requirement is met***. The predominance inquiry

28  "focuses on the relationship between the common and individual issues. When

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's alleged uniform pay policy strongly supports a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F.Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (9th Cir. 2009). Accordingly, Plaintiff argues that common issues of law and fact predominate, and Defendant does not oppose this argument for purposes of settlement approval only.

***The superiority requirement is met.*** Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. Plaintiff alleges that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   *Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the

2   plaintiffs to pool claims which would be uneconomical to litigate individually.")

3   (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a

4   situation, the superiority requirement is "easily satisfied." *Id.* Plaintiff avers that the

5   same holds true here. Defendant does not oppose such a finding for purposes of

6   settlement approval only.

**B.    The Proposed Settlement Is Fair, Reasonable, and Adequate.**

8   The *Manual for Complex Litigation* § 21.62 identifies several factors that

9   courts may weigh in determining whether a settlement is fair, reasonable, and

10  adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows: Fairness

11  calls for a comparative analysis of the treatment of class members vis-a-vis each

12  other and vis-a-vis similar individuals with similar claims who are not in the class.

13  Reasonableness depends on an analysis of the class allegations and claims and

14  the responsiveness of the settlement to those claims. Adequacy of the settlement

15  involves a comparison of the relief granted relative to what class members might

16  have obtained without using the class action process. *Id.,* § 21.62 at 315.

17  At the preliminary approval stage, courts do not make a final determination

18  of fairness, reasonableness, and adequacy. Instead, the key question at this point

19  is only whether the settlement is "potentially fair, as the Court will make a final

20  determination of [the settlement's] adequacy at the hearing on Final Approval,

21  after such time as any party has had a chance to object and/or opt out." *Acosta v.

22  Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry

23  should focus on whether the proposed settlement falls within the "range of

24  possible approval" and appears to be sufficiently fair, reasonable, and adequate to

25  warrant distributing notice to class members informing them about the proposed

26  settlement and their options for responding and participating. *Molski v. Gleich,* 318

27  F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632.

28  "Once the judge is satisfied as to the ... results of the initial inquiry into the [1]

1   fairness, [2] reasonableness and [3] adequacy of the settlement," the court should
2   direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.
3   Plaintiff avers that all three are preliminarily met as follows:

4              **1.      The Settlement Is Fair.**

5       **Fairness of distribution among class members.** The proposed
6   settlement is fair in that Class Members' benefits are determined by the number of
7   hours they worked during the class period. *See* Settlement at ¶ 10(d).
8   Furthermore, the proposed settlement would release only participating Class
9   Members' tip confiscation claims, not all potential employment claims, in
10  exchange for the financial benefits they receive. *Id.* at ¶ 18. Moreover, after
11  subtracting out costs, third party administrator fees, enhancements, and attorneys'
12  fees, the net class fund of approximately $10,000.00 nevertheless represents over
13  100% of the actual amount allegedly owed. *See* Exhibit II, ¶ 11. Accordingly, the
14  proportional distribution of such amount to Class Members based on the number
15  of hours they worked during the class period is fair.

16      **Fairness of proposed attorneys' fees.** The allocation of total settlement
17  funds between Class Members and the attorneys is also fair, in that the settlement
18  agreement provides for Plaintiff's counsel to seek no more than $3,500.00 in fees.
19  The requested fees are fair compensation for undertaking complex, risky,
20  expensive, and time-consuming litigation solely on a contingency basis. Of
21  course, the Nevada statutes Plaintiff has brought her claims under specifically
22  provide for reasonable attorneys' fees to a successful plaintiff. *See* NRS §
23  608.140.

24      Further, the requests are in line with other attorneys' fees awards for wage
25  and hour class actions, particularly where a significant portion of the class
26  members will be receiving substantial claim payment amounts of several hundred
27  dollars. Indeed, courts have recognized that an appropriate method for awarding
28  attorneys' fees in class action is to award a percentage of the "common fund"

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving request for attorneys' fees of thirty-three and one-third percent of the total settlement fund); *see also Third Circuit Task Force Report: Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

58 (recommending that the lodestar method be abandoned in all common fund cases). Similarly, as the Ninth Circuit observed, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Finally, there are several reasons why the percentage-of-recovery method makes sense from an economic perspective. First, contingency fee lawyers work on a mix of cases, and a profit in one case is often necessary to offset a loss in another. *See*, *generally*, *Risks, Reputations and Rewards: Contingency Fee Legal Practice in the United States* by Herbert M Kritzer (Stanford Law and Politics 2004). "Once one accepts that contingency lawyers are providing a risk sharing service, it becomes paramount to incorporate into the analysis of contingency fee practice frameworks that explicitly consider this element of risk sharing." *Id.* at 16. Not only is the probability for recovery a variable at the time the case is initiated, but the maximum amount of recovery itself is also often unknown. "While much of the literature speaks of going rates and what cases are worth, evidence suggests that case worth is very slippery; it is not even clear that, given complete case files, experts agree to an order of magnitude on what a given case is worth." *Id.* at 17. In addition, "another element of uncertainty concerns the size of the investment the lawyer will make. With certain very specific exceptions, a lawyer can seldom know in advance how much time and effort a particular case will require, because that is largely out of his control." *Id.*

Class counsels' fees application is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Moreover, as mentioned above, this District Court has previously approved a settlement in a different matter based upon these same claims and with this same settlement structure, including the percentage of attorneys' fees. *See Zimmerman v. Buddha Entertainment, LLC, et al.*, Case No. 2:18-cv-01460-JAD-CWH at ECF Nos. 19 and 23 therein (approving attorneys' fees of 1/3 of total settlement amount) (Dorsey, J.); *see also Gaspar, et al. v. Supershuttle Las Vegas, LLC*, Case No. 2:15-cv-02149-APG-VCF at ECF Nos. 80 and 82 therein (approving attorneys' fees of 39.83% of total settlement amount in wage-and-hour matter) (Gordon, J.).

Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" award for the named Plaintiff**. The principle of fairness is also well served by the $1,000.00 enhancement payment proposed for the named Plaintiff. Plaintiff provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. Further, Plaintiff incurred significant personal risk in bringing this lawsuit on behalf of the other persons in the class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). She could have been held liable for Defendant's

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    costs if she were ultimately unsuccessful in resolving the case, and her potential
2    employment opportunities could (and can still be) impacted because of her public
3    participation in this lawsuit. Such service payments are recognized as serving an
4    important function in promoting class action settlements. In *League of Martin v.*
5    *City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the
6    proposed settlement properly granted the named plaintiff additional relief,
7    explaining that it is "not uncommon for class ... members to receive special
8    treatment in settlement" when they have been instrumental in prosecuting the
9    lawsuit. *Id.* at 1024. Accordingly, the enhancement is fair.

10                **2.    The Settlement Is Reasonable.**

11           At $21,000.00 overall, the proposed Settlement is reasonable. This is not
12   a settlement where the aggregate figure is large simply because the size of the
13   class is in the tens or hundreds of thousands. Instead, here the class size is
14   relatively moderate in comparison, but Class Members are eligible for financial
15   benefit. These considerations indicate that the proposed Settlement falls within
16   the range of reasonableness, warranting preliminary approval.

17           This conclusion is reinforced by considering such factors as the risk that a
18   class might not be certified or might be significantly smaller than proposed, the
19   uncertainty surrounding various unsettled legal issues, and the time, expense,
20   and complexity of the litigation, including the possibility of appellate proceedings.
21   Counsel for Plaintiff and Defendant are in agreement the $21,000.00 settlement
22   represents a reasonable recovery based on the alleged violations. *See* Exhibit I
23   at ¶ 7.

24           Furthermore, while Class Counsel believe that Plaintiff's claims are
25   meritorious, Defendant has raised significant legal challenges on a number of
26   issues affecting the ultimate recovery by Plaintiff and the Settlement Class, if any
27   recovery is ultimately awarded at trial. Class Counsel are experienced class
28   action litigators, and they understand that the outcome of class certification, trial,

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    and any attendant appeals were inherently uncertain, as well as likely to
2    consume many more months, even years. *See* Exhibit II at ¶ 14. Having
3    reviewed relevant compensation data and employment information, counsel for
4    the Parties—all experienced class action litigators well versed in wage and hour
5    law—arrived at a reasonable resolution through a protracted and arms'-length
6    direct negotiation process, which continued into all details of the settlement
7    agreement and ancillary documents. *See* Exhibit II at ¶¶ 5-7.

8         Another factor considered in approving a settlement is the complexity,
9    expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625.
10   The Court must weigh the benefits of the proposed settlement against the
11   expense and delay involved in achieving an equivalent or more favorable result
12   at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971). The policy
13   that favors settlement of class actions and other complex cases applies with
14   particular force here. Employment cases, and specifically wage and hour cases,
15   are expensive and time-consuming. That this is a class action further amplifies
16   the economies of time, effort, and expense achieved by the Settlement.
17   Inevitably, the certification process alone would add time and expense to the
18   litigation process. The Settlement, on the other hand, provides class members
19   substantial, prompt, and efficient relief. The Settlement in this case is therefore
20   consistent with the "overriding public interest in settling and quieting litigation"
21   that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco
22   Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg
23   on Class Actions* § 11.41 (citing cases).

24        In sum, the resulting Settlement is, in light of all applicable factors,
25   reasonable, and warrants notification of its terms to members of the potential
26   class for their consideration and response.

27

28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GABROY | MESSER

170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

### 3.     The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover."     *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 634 (9th Cir. 1982) (internal citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the Settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $21,000.00 settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

1
2

**C.      The Notice Adequately Informs Class Members of the Settlement.**

3

The Notice explains the process; how to request to be excluded or object; and

4

the consequences of the action the Class Member takes (submitting a claim,

5

opting out, or objecting), in terms of both financial benefit and release of state

6

claims. *See* Exhibit A to the Settlement, generally. The Notice advises class

7

members about the final approval hearing, their rights with respect to that

8

hearing, and how to get more information. *Id.* The 30-day time frame to opt out or

9

object is reasonable, allowing class members to digest the information in the

10

notice and obtain answers to questions before deciding on the action they want

11

to take. *Id.* Accordingly, in addition to approving the Settlement agreement as a

12

whole, the Parties respectfully ask that the Court approve the Notice and other

13

ancillary forms in substantially the format presented with the Settlement.

14

**IV.     CONCLUSION**

15

Based on the information and reasons provided above, Plaintiff

16

respectfully requests that the Court enter the proposed order granting preliminary

17

approval of the class action settlement that is attached to the Settlement as

18

Exhibit B.

19

/ / /

20
21
22
23
24
25
26
27
28

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    To further assist this Court and for clarity, the proposed Order is also

2    submitted concurrently with this Motion. In addition to this Court's approval and

3    signature, the only further action for this Court to take at this time would be to set

4    a date for the Final Fairness Hearing to be inserted at page 4 of such proposed

5    Order.

6         DATED this 9th day of December 2023.

7                                   Respectfully submitted,

8                                   GABROY | MESSER

9                                   By: /s/ Christian Gabroy_____
10                                  Christian Gabroy
                                    (#8805)
11                                  Kaine Messer
                                    (#14240)
12                                  The District at Green Valley Ranch
                                    170 South Green Valley Parkway
13                                  Suite 280
                                    Henderson, Nevada 89012
14                                  Tel:    (702) 259-7777
                                    Fax:    (702) 259-7704
15                                  christian@gabroy.com
                                    kmesser@gabroy.com
16                                  Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

     Pursuant to Fed. R. Civ. P. 5, I hereby certify that the following parties by
electronic means on this 9th day of December 2023 have been served with this
2

3
**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**:

4

     *All parties registered through the Court's CM/ECF system.*

5

6

7
                                        GABROY | MESSER

By: /s/ Christian Gabroy
Christian Gabroy
8
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
9
The District at Green Valley Ranch
170 South Green Valley Parkway
10
Suite  280
Henderson, Nevada 89012
11
Tel:    (702) 259-7777
Fax:    (702) 259-7704
12
christian@gabroy.com
kmesser@gabroy.com
13
*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704