Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
GABROY | MESSER
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:   (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com

*Attorneys for Plaintiff
Douglas Vasquez*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DOUGLAS VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GIBRALTAR HOSPITALITY SERVICES, LLC d/b/a and a/k/a 7TH AND CARSON; EMPLOYEE(S)/AGENT(S) DOES 1-10; and ROE CORPORATIONS 11-20; inclusive,<br><br>Defendants. | Case No. 2:23-cv-00441-CDS-DJA<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD**<br><br>Hearing date: November 4, 2024<br>Hearing time: 10:00 AM |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINALAPPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD**

Plaintiff Douglas Vasquez ("Plaintiff" or "Vasquez"), by and through his attorneys of record, Christian Gabroy, Esq. and Kaine Messer, Esq. of Gabroy | Messer, hereby files this Unopposed Motion For Final Approval Of Class Action Settlement, Attorneys' Fees, Costs, and Enhancement Award pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's implementation schedule, ECF No. 33, p. 4, lines 11-13.

This Motion is made and based upon the below Memorandum of Points and Authorities, the exhibits attached hereto, other papers and pleadings in this action,

all matters upon which judicial notice may be taken, and any oral argument this Honorable Court may entertain.

DATED this 28th day of October 2024.

GABROY | MESSER

By: /s/ Christian Gabroy
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:   (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff Douglas Vasquez*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On June 25, 2024, the Court entered the order granting preliminary approval of class action settlement in this matter (the "Preliminary Order," ECF No. 33). In addition to approving the overall settlement (the "Settlement"), the Preliminary Order conditionally certified a settlement class, appointed a class representative and class counsel, approved a notice of preliminary approval to class members ("Class Members"), scheduled the final approval hearing, and confirmed the selection of ILYM Group, Inc. ("ILYM") as the claims administrator. *Id.*

The class administration procedures ordered by the Court have been completed as summarized in the declaration prepared by Cassandra Polites of ILYM. *See* Declaration of Cassandra Polites of ILYM Group, Inc. Regarding Notice and Settlement Administration, hereinafter "Polites Dec." or "Polites Declaration," attached hereto as Exhibit I. The Notice and all related materials ("Notice Packets") were distributed to 95 Class Members, and deadlines for those Class Members to

opt out of or object to the Settlement have passed. *See* Polites Dec. at ¶ 7. No objections were received, and no Class Members requested exclusion from the Settlement. *See id.* at ¶¶ 11, 12.

**II.    SUMMARY OF THE NOTICE AND CLAIMS PROCESS**

A summary of the litigation, terms of the Parties' settlement agreement (the "Settlement Agreement", ECF No. 23-1), and fairness and adequacy of the Settlement are set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and the Declaration of Christian Gabroy in support thereof, filed on December 9, 2023, which the Parties incorporate by reference. ECF Nos. 23, 23-2. The upcoming final fairness hearing was continued to November 4, 2024. *See* ECF Nos. 30, 32, and 35.

On August 7, 2024, Defendant's counsel provided ILYM with the last known addresses of 95 settlement class members (the "Class List"). *See* Polites Dec. at ¶ 5. ILYM conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. *Id.* at ¶ 6. Accordingly, on August 23, 2024, ILYM mailed Notice Packets to 95 class members in the form approved by the Court (the "Notice Packet"). *Id.* at ¶ 7. The Notice Packet provided that class members had until September 23, 2024 to submit written exclusions or objections to the settlement. *See* Exhibit A to the Polites Dec. Ultimately, only eleven (11) of the Notice Packets were deemed undeliverable. *Id.* at 10.

To date, ILYM has received no requests for exclusion. *Id.* at ¶ 11. No objections to the Settlement were received by ILYM or counsel. *Id.* at ¶ 12; *see also* Declaration of Christian Gabroy, Esq. attached hereto as Exhibit II ("Gabroy Dec.") at ¶ 11. The largest settlement share is approximately $1,547.83, and the average settlement share is $104.17. *See* Polites Dec. at ¶ 15. Class Members stand to receive 100% of the net settlement fund of $10,000.00. *Id.* at ¶ 13.

**III.   ARGUMENT**

    **A**.   **The Court Should Grant The Parties' Request For Final Approval Of The Settlement**

        1.   <u>Standard for final approval of a class action settlement.</u>

Federal Rule of Civil Procedure 23(e) provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Such approval typically involves a two-step process: (1) preliminary approval of the class settlement and notice to all class members and (2) a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate. *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011). A court should approve a class settlement under Rule 23 if it "is fundamentally fair, adequate and reasonable." *See e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

The Court has plenary authority to approve or reject settlements proposed by the parties. *In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citation omitted). Ninth Circuit courts consider the following eight factors to assess whether final approval of a class settlement is warranted: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status through trial; (4) amount offered in settlement; (5) extent of discovery completed and state of the proceedings; (6) experience and views of counsel; (7) whether there is a governmental participant; and (8) reaction of class members to the proposed settlement. *See e.g., Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ninth Circuit courts also consider whether the settlement is a product of fraud or collusion. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts are not required to assess whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 (overruled on other grounds).

        2.      <u>Application of the relevant criteria.</u>

                *a.*      *Relative strength of Plaintiff's claims.*

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C-11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. Union Bancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012).

Plaintiff filed his complaint against Defendant in the Eighth Judicial District Court for the State of Nevada in and for the County of Clark on January 26, 2023. ECF No. 1-2, pp. 2-19. Plaintiff's legal claims stem from his allegation that Defendant maintained an unlawful practice of requiring Plaintiff and those similarly situated to share portions of their earned tips with Defendant's management. *See id.* at pp. 6-7. Defendant removed this matter to federal court on or about March 23, 2023. ECF No. 1.

As previously represented to this Court, the parties then began exploring the potential for settlement. *See, e.g.,* ECF No. 10, p. 1. To that end, the Parties then engaged in informal discovery. Defendant's counsel provided Plaintiff's counsel with voluminous and detailed class data. The Parties then engaged in extensive discussions regarding their respective positions and the information and data provided to properly evaluate the merits of the claims alleged.

Following such extensive discussions regarding the strengths of their

respective positions, the Parties reached a proposed class action settlement through arm's-length negotiations. *See* ECF No. 23-1.

Plaintiff believes his claims are strong but understands that success is far from guaranteed. Plaintiff is cognizant of such factors as the risk that a class might not be certified or might be significantly smaller than proposed, the uncertainty on some of the legal issues, as well as the time, expense, and complexity of further litigation, including the possibility of appellate proceedings. Defendant maintains that it properly paid all wages mandated by Nevada law and denies that it had any policy of denying such wages or overtime to employees, or otherwise engaged in any wrongdoing.

Furthermore, while Class Counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months, even years. Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted, arm's-length, negotiation process, which continued into all details of the Settlement Agreement and ancillary documents.

      *b.*  *Risk, expense, and complexity of further litigation.*

Settlement is preferable to lengthy and expensive litigation with uncertain results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev. Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev. Jan. 18, 2013). Here, without settlement, the Parties would be forced to engage in lengthy discovery and extensive motion practice, including briefing on class certification issues and summary judgment. Trial would necessarily involve extensive testimony from numerous witnesses. And, any final judgment would likely be appealed, thereby extending the duration of the litigation.

Settlement avoids further expense and delay and guarantees a recovery to class members as touched on in factor (a) directly above. Therefore, the risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris*, 2012 WL 6900931, at *7.

       *c.*  *Risk of maintaining class status.*

As discussed in section III.A.2.a, *supra*, Plaintiff faces the risk of not obtaining or maintaining Rule 23 class action status if this litigation proceeds. Thus, this factor, too, favors final approval of settlement.

       *d.*  *Benefits conferred by the settlement.*

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

Here, the gross settlement fund amount of $21,000.00 is reasonable when balanced against the possible outcome of further litigation and potential appeals. The largest settlement share is approximately $1,547.83, and the average settlement share is approximately $104.17. *See* Polites Dec. at ¶ 15. An estimated 47.62% of the gross settlement amount will be made in settlement payments to currently employed and formerly employed class members, which represents a reasonable recovery for the class, even without accounting for the risks that class treatment could be denied or that Defendant would prevail on the merits. *Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) *citing In re Mego Fin. Corp. Secs.*

*Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.")).

       *e.*  *Extent of discovery completed and stage of the proceedings.*

This Settlement, following sufficient informal issue and class discovery and genuine arm's-length negotiation, is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996). As discussed in Plaintiff's Motion for Preliminary Approval, ECF No. 26-1, the Parties engaged in extensive discussions and informal discovery of the claims and defenses, including reviewing timekeeping and class member data and analyzing the relevant facts and authority. By the time a settlement was reached, the Parties were well versed in the facts and law applicable to the issues and had diligently evaluated the merits of their claims and defenses. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Accordingly, at the time the settlement was reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). Accordingly, this factor weighs in favor of final approval.

       *f.*  *Experience and views of Plaintiff's Counsel.*

Because they are closely acquainted with the underlying litigation, significant "weight is accorded to the recommendation of counsel." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Plaintiff is represented by counsel with broad experience in complex employment litigation. *See* Gabroy Dec. at ¶ 3. Plaintiff's counsel recommends that the Settlement be approved because they believe it is fair, reasonable, and adequate to the proposed class, and because it reflects a reasoned compromise that takes into consideration the inherent risks in all

employment class litigation and in particular this action. *See* Gabroy Dec. at ¶ 8, 10, 16. Given the experience of the attorneys involved in this litigation, the Court should credit counsels' view that the settlement is fair, reasonable, and adequate. *Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better positioned than courts to produce a settlement that fairly reflects each party's expected outcome). Accordingly, this factor weighs in favor of final approval as well.

### g. Presence of a governmental participant

There is no governmental participant in this action. As a result, this factor favors approval of the settlement.

### h. Reaction of the class.

The absence of any objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members. *Nat'l Rural*, 221 F.R.D. at 529; *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010). Here, 88.42% of the Notice Packets were successfully mailed. *See* Polites Dec. at ¶¶ 7, 10. As stated, no objections to the settlement were received and no class members requested exclusion. *See id. at* ¶¶ 11, 12. 100% of the class members are therefore participating. *See id.* at ¶13; *see also Lee v. Enterprise Leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev. 2015) (noting 11% rate does not indicate proposed settlement is not fair, reasonable, and adequate given the lack of objections and small number of opt-outs, "does not cast doubt on what appears to be a beneficial settlement for the class members.").

These facts suggest approval of the settlement by the entire class. Therefore, this factor also favors final approval of the settlement. *See Bolton v. U.S. Nursing Corp.*, No. C-12-4466 LB, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections were filed and two of 1,250 class members requested exclusion from settlement).

> *i.*   *The negotiation process was free from fraud and collusion.*

The Court's inquiry into what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 & n.5 (9th Cir. 1996). Here, the Court preliminarily concluded that the settlement was "fair, adequate and reasonable" as to all potential settlement class members. ECF No. 33, p. 1. Nothing has changed to alter that conclusion. The Parties began settlement negotiations only after informally sharing documents and information, analyzing the records, researching the relevant legal issues, analyzing the potential recovery, and ultimately negotiating the settlement. Gabroy Dec. at ¶ 6. The Parties acknowledged the risks on the merits and class issues and determined that settlement was sensible to avoid these risks and the time and expense required for further litigation and potential appeals. Gabroy Dec. at ¶ 5-7. Because the Parties were fully informed and engaged in arm's-length negotiations, the agreement is free from fraud and collusion.

In short, under the applicable standards for approval of a class action settlement under Fed. R. Civ. P. 23(e), the Settlement meets the standards for final approval.

**B.   The Claims Administration Expenses Are Reasonable And Should Be Approved.**

As described in the Polites Declaration, the Parties, through their settlement administrator, successfully implemented the notice procedure approved by the Court. *See generally* Polites Dec. In total, the Claims Administrator has incurred and will incur $5,000.00 in costs in furtherance of the administration of the Settlement. *See* Polites Dec. at ¶ 16. This amount is

reasonable and should be approved.

### C. The Class Representative Enhancement Award Should Be Approved.

The named plaintiff had requested $1,000.00 as class representative enhancement for services he rendered to the class, which is separate from any other amount the named plaintiff is entitled to receive under the settlement as a member of the settlement class. Such enhancements are routinely awarded to compensate named plaintiffs for the services they provide in prosecuting a class action. *See, e.g., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (enhancement awards of $30,000 to each named plaintiff for services provided to class), *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000.00 participation award).

The enhancement award of $1,000.00 is reasonable in light of the assistance the named plaintiff provided. *See In Lo Re v. Chase Manhattan Corp.*, No. 76 Civ. 154 (MJL), 1979 WL 236, at *6 (S.D.N.Y. May 25, 1979). Specifically, the named plaintiff provided relevant documents to counsel, frequently communicated with counsel by telephone and email, reviewed numerous documents including settlement documents, participated in the negotiation process, provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies and procedures, provided information to assist in the settlement negotiations, and provided information to potential class members about the litigation and settlement administration process. *See e.g.,* Gabroy Dec. at ¶ 12. Plaintiff also understood that he had an obligation to place the interests of the class as a whole above his own personal interests in an effort to advance the case to a favorable outcome on their behalf. In addition, if the Plaintiff did not prevail, as Class Representative he could have been liable for Defendant's costs.

Furthermore, the Settlement Class Members were notified of the requested

enhancement of $1,000.00 for the named plaintiff and none objected. *See In Lo Re*, 1979 WL 236, at *6 (no class member objections indicates approval of enhancement awards). In sum, because of the named plaintiff, this litigation has resulted in a valuable benefit to the settlement class. Thus, the enhancement should be approved.

### D. Class Counsel's Attorneys' Fees And Costs Should Be Approved.

#### 1. Class Counsel's fee award is properly calculated as a percentage of the total Settlement Fund.

Federal law provides that reasonable attorneys' fees shall be awarded to successful plaintiffs who bring actions such as this for unlawfully withheld tips. *See* 29 U.S.C. § 216(b); ECF No. 1-2. Here, class counsel's fee request is 16.67% of the potential gross settlement fund. The requested amount is below the range of the market rate of 40 to 50 percent in other types of contingency cases. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6. Therefore, the requested amount is presumptively fair, reasonable, and appropriate.

##### a. Determination of class counsel fee award in the wage and hour class action context.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). However, courts have observed that the percentage-of-recovery method is preferable to the lodestar method in common fund cases because: (1) it aligns the interests of Class Counsel and the class; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In Re Activision Securities Litigation*, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989) (Patel, J.); *see also Third Circuit Task Force Report: Court*

*Awarded Attorney Fees*, 108 F.R.D. 237, 255-58 (recommending that the lodestar method be abandoned in all common fund cases). Similarly, as the Ninth Circuit observed in *Bluetooth*, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth,* 654 F.3d at 942. Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).

There are several reasons why the percentage-of-recovery method makes sense from an economic perspective. First, contingency fee lawyers work on a mix of cases, and a profit in one case is often necessary to offset a loss in another. *See*, *generally*, *Risks, Reputations and Rewards: Contingency Fee Legal Practice in the United States* by Herbert M. Kritzer (Stanford Law and Politics 2004). "Once one accepts that contingency lawyers are providing a risk sharing service, it becomes paramount to incorporate into the analysis of contingency fee practice frameworks that explicitly consider this element of risk sharing." *Id*. at 16. Not only is the probability for recovery a variable at the time the case is initiated, but the maximum amount of recovery itself is also often unknown. "While much of the literature speaks of going rates and what cases are worth, evidence suggests that case worth is very slippery; it is not even clear that, given complete case files, experts agree to an order of magnitude on what a given case is worth." *Id*. at 17. In addition, "another element of uncertainty concerns the size of the investment the lawyer will make. With certain very specific exceptions, a lawyer can seldom

know in advance how much time and effort a particular case will require, because that is largely out of his control." *Id.*

Historically, attorneys' fee awards have ranged from 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6, *supra*. Furthermore, in *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund." *Boeing,* 444 U.S. at 473. The Supreme Court found the total amount of the fund the proper denominator, approving fees of approximately $2,000,000.00 on a settlement valued at $7,000,000.00 where claims totaled $706,600 of $1,544,300 in unconverted debentures at issue, or 47% of the total.

     b. *Plaintiff's fee request is in line with fees awards in wage-hour class actions.*

Under these principles, a percentage of the common fund fee award is properly based on the total settlement value of $21,000.00 in this case. Class counsel's request for 16.67% of this amount ($3,500.00) is fair compensation for undertaking complex, risky, expensive, and prolonged litigation solely on a contingency basis. *See* Gabroy Dec. at ¶¶ 13, 14. The request is in line with attorneys' fees awards in other wage-and-hour class actions. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6, *supra*. Moreover, the notice of preliminary approval provided to class members plainly disclosed that $3,500.00 of the settlement would be allocated to pay attorneys' fees. No class member objected to the settlement in general or the attorneys' fees specifically. This is an overwhelming indication that the attorneys' fees and litigation costs sought are fair, reasonable, and appropriate. Accordingly, class counsel's attorneys' fee award should be approved.

2. Nevada law and the *Brunzell* Factors support Class Counsel's Fee Request.

The Supreme Court of Nevada has recognized that in determining the amount of fees to award, a court's "analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *See Schuette v. Beazer Homes Holdings Corp.,* 124 P. 3d 530, 549 (2005). Courts consider four factors to determine whether the requested attorney fee is reasonable: (i) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (ii) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (iii) the work actually performed by the lawyer: the skill, time and attention given to the work; (iv) the result: whether the attorney was successful and what benefits were derived. *Schuette,* 124 p.3d at 549, n. 100, *citing Brunzell v. Golden Gate National Bank,* 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

i. The qualities of the advocate.

Plaintiff's counsel has extensive litigation practice and wage-and-hour practice experience. Mr. Gabroy (and his partner, Kaine Messer, Esq.) has been certified as class counsel in various cases as outlined in his Declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval. ECF No. 23-2. Accordingly, the quality of the attorneys involved in this case, their abilities, training, education, experience, professional standing, and skill support Plaintiff's fees request.

ii. The character of the work to be done.

The class action process provides for important public policy goals that have long been recognized by the judiciary. United States Supreme Court Justice Douglas reasoned, "The class action is one of the few legal remedies the small

claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186, 94 S. Ct. 2140, 2156, 40 L. Ed. 2d 732 (1974) (Douglas, J, dissenting). This sentiment holds true here, and is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)).

Cases such as this rely heavily on the intricate analysis of time and clock data, employee testimony, and actual pay records. Indeed, for low-wage workers, such as Plaintiff and the fellow employees he represents, each fraction of hour or fraction of hourly wage can represent the very real possibility of having to choose between paying the rent on time or going grocery shopping. Furthermore, litigation is time consuming, stressful, usually expensive, and one of the most serious of matters to both plaintiffs and defendants. Here, Plaintiff asserted that a portion of his hard-earned tips were unlawfully withheld. See ECF No. 1-2, pp. 6-7. This has a very real effect on Plaintiff and the workers he represents and their ability to support themselves. Thus, the character of the work done, its difficulty, intricacy, importance, and effect on the Parties in this litigation support Plaintiff's fees request.

        iii.  The work actually performed and the results achieved.

Plaintiff's Counsel's knowledge of wage and hour law allowed Counsel to calculate the potential damages in this case through an intricate review of the time clock and pay records in an effort to provide both Parties with a realistic assessment of the value of Plaintiff's claims, which was the impetus for resolution of this case. Given that the Settlement provides recovery for the wages potentially owed, the basis for recovery is a percentage share of the total fund based upon the number of hours worked by each class member in comparison to the total number of hours worked by the entire class during the class period, only releases participating class members' wage and hour claims, not other potential employment claims, and in exchange for the benefit of a quick and certain payout, this factor supports Plaintiff's fees request. Gabroy Dec. at ¶¶ 5, 7, 14, 16.

Additionally, given these excellent results obtained, no Lodestar crosscheck is necessary. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (no Lodestar crosscheck necessary when the benefit to the class is easily quantified); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Further, under the percentage-of-recovery method, the Ninth Circuit has held that "(thirty-three percent) for attorneys' fees is justified because of the complexity of the issues and the risks." *In re P. Enterprises Securities Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). Here, the result remains easily quantified. Specifically, even after subtracting out costs, third party administrator fees, enhancements, and attorneys' fees and costs, the net class fund of approximately $10,000.00 represents over 100% of the actual amount of confiscated tips allegedly owed. *See* Gabroy Dec. at ¶ 8.

    3.  Class Counsel's Costs and Expenses Should Be Approved.

In the course of this litigation, class counsel has incurred and expects to incur out-of-pocket costs and expenses of over $1,500.00, which is the agreed

upon amount in the Settlement. *See* Gabroy Dec. at ¶ 15. Additionally, our law provides for the recovery of reasonable costs in these types of actions. *See* 29 U.S.C. § 216(b). Given that class notice plainly disclosed that up to $1,500.00 would be allocated to pay litigation costs advanced by class counsel, and that there were no objections to the settlement, the Court should approve Plaintiff's costs and expenses. To be clear, class counsel only requests costs of such $1,500.00 amount.

## IV.   CONCLUSION

Based on the information and reasons provided above, Plaintiff respectfully requests that the Court enter an order granting final approval of the class action settlement.

DATED this 28th day of October 2024.

Respectfully submitted,

GABROY | MESSER

By: */s/ Christian Gabroy*
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:   (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5, I hereby certify that the following parties by electronic means on this 28th day of October 2024 have been served with this **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD**:

*All parties registered through the Court's CM/ECF system.*

GABROY | MESSER

By: /s/ Christian Gabroy
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
Tel:   (702) 259-7777
Fax:   (702) 259-7704
christian@gabroy.com
kmesser@gabroy.com
*Attorneys for Plaintiff*